IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                         CIV No.  11-675 LH/KBM

**FUNDS in the AMOUNT OF $33,534.93
ACCOUNT NUMBER ENDING \*\*8429
FROM BANK OF AMERICA,**

**FUNDS in the AMOUNT OF $5,118.11
ACCOUNT NUMBER ENDING \*\*5054
FROM THE BANK OF AMERICA,**

        Defendant,

**and**

**BRICIA E. HERRERA-HERNANDEZ
and SILVIA Q. ANAYA,**

        Claimants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on a Motion to Dismiss Verified Complaint for Forfeiture *In Rem* (Docket No. 28), filed by Claimant Bricia E. Herrera-Hernandez. The Court, having considered the motion, briefs, Verified Complaint for Forfeiture *In Rem*, and applicable law, concludes that Claimant's motion is **denied**.

1

**I.      Procedural History of This Case**

On August 3, 2011, the United States filed its Verified Complaint for Forfeiture *In Rem* (Docket No. 1; "Complaint").  In its Complaint, the United States seeks to forfeit $33,534.93 in Bank of America account number ending in **8429, and $5,118.11 in Bank of America account number ending in **5054 ("Defendant Funds" or "Funds" or "Property").  Specifically, the United States first alleges that these Funds are subject to arrest and forfeiture under 21 U.S.C. § 881(a)(6), because they were furnished, or intended to be furnished, in exchange for a controlled substance, or constitute proceeds traceable to such an exchange, or were used or intended to be used to facilitate a violation of the Controlled Substances Act.  (Compl. ¶ 16).  The United States next alleges that these Funds are subject to arrest and forfeiture under 18 U.S.C. § 981(a)(1)(A), because they constitute property that was involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 or 18 U.S.C. § 1957[1], or are property traceable to such property. (Compl. ¶¶ 17, 18).

On August 26, 2011, Claimant Bricia E. Herrera-Hernandez filed an Answer to the Complaint. (Docket No. 4).  On August 26, 2011, she filed a Verified Claim (Docket No. 5) to the two bank accounts referenced in the caption of this matter, averring that she was one of the owners of these accounts; that she makes a claim to these bank accounts; and that she contests and objects to the proposed forfeiture of these bank accounts.  Furthermore, she averred that these accounts were not used or acquired as a result of a violation of the Controlled Substances Act (Title 21, U.S.C. Sec. 801, *et seq.*).

The United States provided proof that a Notice of Civil Forfeiture was posted on www.forfeiture.gov from August 10, 2011 through September 8, 2011, as required by Rule

---

[1] Section 1956 makes it a crime to launder proceeds from some form of unlawful activity.  *See* 18 U.S.C. § 1956.  Section 1957 criminalizes engaging in monetary transactions in property derived from specified unlawful activity.  *See id*. § 1957.

2

G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Docket No. 6).

On April 11, 2012, a Clerk's Entry of Default was filed against Claimant Silvia Q. Anaya, and any unknown claimants (Docket No. 20), due to their failure to plead or otherwise defend, with a subsequent Partial Default Judgment (Docket No. 23) entered, ordering that all right, title and interest of Claimant Silvia Q. Anaya and all unknown claimants in the Defendant Funds are forfeited to the United States, and that their title thereto is vested in the United States.

The next document filed in this matter was the Motion to Dismiss Verified Complaint for Forfeiture *In Rem*, filed by the remaining Claimant, Bricia Herrera-Hernandez, which is now before the Court. The Claimant asserts that the Complaint must be subject to heightened pleading requirements, which she asserts have not been met. She argues that the Complaint in this case fails to provide a plausibility link between money contained in her bank accounts and the unlawful activity described in the Complaint. She claims that the Complaint merely alleges that she knew drug traffickers, had money and spent money, that these allegations are insufficient, and that the Complaint is therefore deficient on its face.

In response, the United States contends that the Complaint's allegations are adequate, or alternatively, that Claimant's motion is premature (Resp.Br. at 4).

**II.    Applicable Pleading Standard**

The procedures governing civil forfeiture actions are set forth in various forfeiture statutes, the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983, and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"). Rule G of the Supplemental Rules is entitled, "Forfeiture Actions in

Rem."[2] Rule G(1) states that "[t]his rule governs a forfeiture action in rem arising from a federal statute. To the extent that this rule does not address an issue, Supplemental Rules C and E[3] and the Federal Rules of Civil Procedure also apply".[4]

The Advisory Committee's Notes of 2006 clarify that the pleading requirements contained in Supplemental Rule G(2)(f) prevail over the language contained in Supplemental Rule E(2)(a)[5]. The Advisory Committee noted that application of the Rule E standard in civil forfeiture actions "has evolved to the standard stated in subdivision [G](2)(f)."[6] Clearly, Rule G(2)(f) is now the source of the correct standard to be applied when determining the sufficiency of a Complaint. *See United States v. $40,000.00 in U.S. Currency,* 2010 WL 2330353, * 3, 4 (W.D.N.C. 2010)(stating that "Rule G of the Supplemental Rules replaced the *in rem* forfeiture provisions of Rule E(2)"; and the 2006 Amendments added a new Rule G, "supplanting Rule E(2)(a) and governing procedures in civil forfeiture actions.").

The standard under Rule G(2)(f) is that the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at

---

[2] "Prior to the adoption of Supplemental Rule G, the rules governing maritime forfeiture actions, Supplemental Rules C and E, also governed civil forfeiture actions." *United States v. Approximately $72,000.00 in U.S. Currency*, 2009 WL 506866, *5 (N.D.Cal.2009). On December 1, 2006, Supplemental Rule G was adopted to govern civil forfeiture actions in rem. "At the same time, Rules C and E were revised to take into account the enactment of Rule G." *Id*.

[3] The Advisory Committee's Note of 2006 states that Rules C and E are "not to be invoked to create conflicts with Rule G. They are to be used only when Rule G, fairly construed, does not address the issue."

[4] The Third Circuit addressed the tension between the rules applicable to forfeiture proceeds: "Parties to civil forfeiture proceedings are the servants of two procedural masters: The Supplemental Rules specially devised for admiralty and *in rem* proceeds, and the general applicable Federal Rules of Civil Procedure …. The balance between the two is struck in favor of the Supplemental Rules, which always apply to civil forfeiture proceedings. *See* 18 U.S.C. § 983(a)(3)." *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 149-50 (3d Cir. 2003). The Third Circuit noted that there may be certain circumstances where the Rules of Civil Procedure come into play, but only to the extent they are not "inconsistent with" a Supplemental Rule. The Advisory Committee's Note of 2006 states that the "Civil Rules continue to provide the procedural framework within which Rule G and the other Supplemental Rules operate.… Rule G(1) … state[s] this basic proposition."

[5] Rule E(2)(a) requires that the complaint in an *in* rem proceeding must "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."

[6] The Committee cited *United States. v. Mondragon*, 313 F.3d 862 (4th Cir. 2002) as the source of case law which will "carr[y] forward this forfeiture case law without change" under Rule G(2)(f).

trial." This pleading standard clearly applies in the situation now before the Court – *i.e.*, when a Claimant seeks dismissal of the forfeiture complaint filed against him/her.  Rule G is a higher standard than the general pleading requirements found at Rule 8(a)(2), which only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Because civil forfeiture *in rem* actions provide the government with a powerful tool to effectuate an immediate deprivation of property (subject to later judicial review), pleading requirements under the Supplemental Rules are more stringent than the general pleading requirements found in the Federal Rules of Civil Procedure. *$40,000.00 in U.S. Currency*, 2010 WL 2330353 (W.D.N.C. 2010).[7]

### III.     Burdens of Proof Under the CAFRA

The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), codified primarily at 18 U.S.C. § 983, significantly amended civil forfeiture procedures for cases commenced on or after August 23, 2000.  Under the CAFRA, the Government's burden is twofold:  to establish by a preponderance of the evidence (1) that the property is subject to forfeiture; and, (2) that there is a substantial connection between the defendant property and the alleged offense.  18 U.S.C. § 983(c),  *See United States v. Kiulin*, 360 F.3d 456, 461 (4th Cir. 2004).  Under the preponderance of the evidence standard, the Government must show that the relevant facts are more likely true

---

[7] It is important to keep in mind the difference between the requirements for sufficient pleading under Rule G(2)(f), as opposed to the ultimate sufficiency of proof at trial.  In viewing the sufficiency of the Complaint under Rule G(2)(f), the Court is not permitted to dismiss a complaint, simply because the Government did not have sufficient evidence at the time the Complaint was filed to establish the forfeitability of the Defendant Funds.  18 U.S.C. § 983(a)(3)(D).  The Court's role is a limited one:  "[T]he Government is not required to allege in the complaint all of the facts and evidence at its disposal.  It is sufficient for the Government to simply allege enough facts for the claimant to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation.  *The issue is one of pleading, not proof at trial*, and it is for this reason that '[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property.' "  *United States v. $22,173.00 in U.S. Currency*, 2010 WL 1257601 (S.D.N.Y.2010)(emphasis added).  Furthermore, the Court notes that the Government may use evidence gathered after filing the complaint to meet its burden of proof.  18 U.SC. § 983(c)(2).

than not. Courts look to the totality of the circumstances to determine whether the Government has met its burden, in the context of the evidence. *United States v. $252,300.00*, 484 F.3d 1271, 1274 (10th Cir. 2007). Once the Government has met its burden, the claimant then has the burden of proving by a preponderance of the evidence, that the property is not related to any illegal activities, or alternatively, that s/he is an innocent owner of the property. *See id.* § 983(d)(2)(A)(i), (ii); *United States v. 16,328 South 43rd East Ave.*, 275 F.3d 1281, 1284-85 (10th Cir. 2002)(describing innocent owner defense as an affirmative defense).

### IV.     Facts Alleged in the Complaint

The United States lists these facts as being "circumstances from which the claim for forfeiture of Defendant Funds arises"[8]:

1. Claimant Herrera-Hernandez opened a savings account number ending **8429 on January 15, 2008; on August 4, 2009, she and Claimant Sylvia Q. Anaya opened a checking account number ending **5054 and also purchased a $15,500 certificate of deposit (account number ending **7123); on December 4, 2009, Claimant Herrera-Hernandez purchased a certificate of deposit (account number ending **2288) for $25,000; all of these transactions were conducted by Claimant Herrera-Hernandez at Bank of America; for the year 2009, Claimant Herrera-Hernandez's income was $18,553, from two different employers. (Compl. ¶¶ 6, 11).

2. Approximately $16,410 was deposited into Claimant Herrera-Hernandez's Bank of America accounts from March 2010 to December 2010. (*Id.*, ¶ 7).

3. According to documents obtained in December 2010 by a DEA special agent, on March 17, 2010, Claimant Herrera-Hernandez used two cashier's checks, dated that

---

[8] *See* Compl. ¶¶ 6-15.

same date, to pay in full for a 2007 Chevrolet Tahoe; one of these checks was from Bank of America for $7,500, and the other from New Mexico Bank and Trust for $16,688.17 (account ending **2360); this latter account was closed by Claimant Herrera-Hernandez following the issuance of the cashier's check; she used $500 cash and $7,000 from a certificate of deposit to obtain the Bank of America cashier's check. (*Id*., ¶ ¶ 8,9).

4. On March 22, 2010, Claimant Herrera-Hernandez purchased a certificate of deposit with $7,000 cash; on May 4, 2010, she redeemed three Bank of America certificates of deposit for a total of $40,576.72, which is the amount she subsequently deposited into her Bank of America check account number ending **5054. (*Id*. ¶ 11).

5. As of December 15, 2010, Claimant Herrera-Hernandez had a Bank of America checking account (number ending **5054) with a balance of approximately $4,739.60, and a savings account (number ending **8429) with a balance of approximately $28,000.72. (*Id*. ¶ 10).

6. During an unspecified period of time, Claimant Herrera-Hernandez made eleven checking and saving account deposits of cash in round numbered amounts at Bank of America, which the Government alleges is consistent with amounts obtained from the sale of narcotics. On an unspecified number of occasions, she deposited her paycheck, issued by her employer, Robert's Oil, into her bank accounts. (*Id*. ¶ 12).

7. In November 2010, a DEA investigation of the Alfredo Pena-Aispuro drug trafficking organization led to arrests and the seizure of more than 16 pounds of heroin, 7 pounds of methamphetamine, and approximately $90,000 cash. Brenda Herrera-Barraza, a sister of Claimant Herrera-Hernandez, was one of the persons arrested. She and

Claimant resided at 2933 Owen Street, S.W., Albuquerque, New Mexico. One of the main (unidentified) targets of the investigation was also located and arrested at this same residence. (*Id.*¶ 13).

8. Claimant Herrera-Hernandez is the registered owner of a red Buick Century. This vehicle was observed (at an undisclosed location) on several occasions during surveillance of individuals involved in trafficking heroin.[9] (*Id.* ¶ 14).

9. Claimant Herrera-Hernandez is the former girlfriend of an individual (identified in the Complaint as "Tieso" LNU) who was arrested on December 31, 2008, in connection with the purchase of approximately 17 ounces of heroin, at an unidentified residence where two kilograms of methamphetamine were found. (*Id.* ¶ 14).

10. The totality of the circumstances establishes that Claimant Herrera-Hernandez has been receiving cash from narcotic sales and depositing this cash into her bank accounts. (*Id.* ¶ 15).

### V.    Analysis of the Motion to Dismiss

The undersigned has closely reviewed the factual allegations of the Complaint. Bearing in mind the applicable pleading standards and the substantive law under the CAFRA, given the totality of the circumstances alleged by the Complaint, the Court concludes that the Government has pled sufficient facts to support a reasonable belief that it will be able to meet its burden of proof under the CAFRA at trial. These allegations, taken together, indicate that the Defendant Funds were more likely than not proceeds traceable to the unlawful exchange of a controlled

---

[9] Contrary to the Response Brief of the United States, the Complaint does not allege that Claimant Herrera-Hernandez "owned a vehicle that was used to facilitate drug trafficking." (Resp. Br. at 9).

substance, *see* 21 U.S.C. § 881(a)(6), or traceable as proceeds being laundered or derived from some unlawful activity, *see* 18 U.S.C. § 981(a)(1)(A), and are therefore subject to forfeiture.

The Government broadly alleges that the Claimant has been receiving cash from narcotic sales and depositing this cash into her bank accounts. (Compl. ¶ 15). More specifically, the Verified Complaint alleges that Claimant opened bank accounts and purchased certificates of deposit, of specific amounts, beginning in December 2009; that the total of these 2009 banking transactions exceeded her income for that year by $21,967; that in 2010 (a year of unknown income), she conducted other sizeable banking transactions and paid $24,188 in cash for a vehicle; that in late November 2010, the Drug Enforcement Agency began investigation of a drug trafficking organization, resulting in arrests and seizure of significant amounts of heroin and methamphetamine and approximately $90,000 in cash; that Claimant's sister, Brenda, who resided with Claimant, was one of the persons arrested pursuant to this investigation; and that another person connected with this investigation was located and arrested at the residence of Claimant and Brenda.[10]

The Court recognizes that, while the Government need not trace the Defendant Funds to a particular drug transaction, it must state detailed facts that the property, more likely than not, was related to some illegal activity. The Court is allowed to rely upon circumstantial allegations and inferences, when evaluating the sufficiency of a complaint. S*ee United States v. $65,930.00 in U.S. Currency*, 2006 WL 923704, *3 (D. Conn. 2006)(The Government is not required to link

---

[10] The Court has disregarded the allegations about Claimant's ex-boyfriend, given their lack of probative value. The allegations are that Claimant is the former girlfriend of an individual who was arrested in December 2008 on drug charges. No details are provided in the Complaint as to when Claimant was allegedly involved with this individual, including when her relationship with this individual terminated. These allegations are too attenuated to be considered in the Court's analysis.
Also disregarded are references in the Response Brief to other elements of "proof," involving Ms. Anaya. The Government has made no move to amend its complaint to strengthen its allegations, and the Court has not considered these statements of Government Counsel in its analysis herein.

the funds to a particular illegal transaction and may rely on circumstantial evidence to establish the requisite connection to illegal conduct).

Possible inferences from the facts set forth in the Verified Complaint are that Claimant's sister, Brenda, and another person also arrested at their residence in 2010, were, in fact, part of a drug trafficking organization; that one or both of these persons gave Claimant possession of Defendant Funds, which were proceeds from the sale of drugs; that the amount of Defendant Funds greatly exceeded the amount of Claimant's income and were not funds from legitimate sources; and, that Claimant's sizeable and numerous banking transactions in 2009 and 2010, as well as the purchase of a vehicle in 2010, were funded with proceeds from illegal drug sales.

While a person's mere propinquity to others independently suspected of criminal activity might not be probative in this analysis, *see Poolaw v. Marcantel*, 565 F.3d 721 (10th Cir. 2009), the fact that a non-familial member was also located and arrested at Claimant's residence on suspicion of illegal drug activity, makes the allegations about Brenda and the other arrestee probative and relevant to this Court's analysis.

Furthermore, situations involving a claimant whose verifiable income cannot account for the level of wealth displayed are frequently involved in forfeiture actions. Certainly, courts have included non-verifiable income in the consideration of the totality of the circumstances. *See United States v. $252,300.00 in United States Currency*, 484 F.3d 1271 (10th Cir. 2007); *United States v. Edwards*, 885 F.2d 377, 390 (7th Cir. 1989).

The Court concludes that the totality of facts alleged are sufficiently detailed to apprise Claimant of the basis for the forfeiture action, allowing her to respond by contesting the source of these Funds. She is sufficiently informed to be able to conduct a meaningful investigation.

Supplemental Rule G's particularity requirements have been met and thus the Government is able to avoid dismissal under Rule 12(b)(6).  *United States v. Mondragon*, 313 F.3d at 866-67.

**WHEREFORE, IT IS HEREBY ORDERED** that Claimant's Motion to Dismiss Verified Complaint for Forfeiture *In Rem* (Docket No. 28) is hereby **denied.**

**IT IS SO ORDERED.**

_____
**SENIOR UNITED STATES DISTRICT JUDGE**